UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BEARY LANDSCAPING INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CATHERINE SHANNON, in her official capacity as Director of the Illinois Department of Labor, <br><br> Defendant. | No. 05 C 5697 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I.  INTRODUCTION**

Plaintiffs are landscape construction companies and their individual owners and officers. They seek declaratory and injunctive relief against Defendant Catherine Shannon, the Director of the Illinois Department of Labor (IDOL). The suit relates to the manner in which IDOL implements the Illinois Prevailing Wage Act (IPWA). This case was reassigned to me from Judge Filip. On March 28, 2007, Judge Filip issued an opinion granting in part and denying in part Defendant's motions to dismiss. Thereafter, Plaintiffs filed a second amended complaint. It contains three counts: (I) violation of due process by improper delegation to private parties; (II) violation of due process by failure to afford a hearing; and (III) violation of equal protection of the laws. Defendant has again moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons outlined below, Defendant's motion to dismiss Count I (violation of due process by improper delegation to private parties) and Defendant's motion to dismiss Count III (deprivation of equal protection) are denied. Plaintiffs voluntarily withdrew Count II, so Defendant's motion to dismiss Count II is denied as moot.

## II. FACTUAL BACKGROUND

Plaintiffs seek to enjoin IDOL's application of the IPWA as it relates to the landscaping contracts they perform in the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, McHenry, and Will. The IPWA provides that:

> [a] wage of no less than the general prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall by paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works.

IPWA, 820 ILL. COMP. STAT. 103/1.

Section 4(a) of the IPWA further requires that public bodies:

> [a]scertain the general prevailing rate of wages in the [county] in which the work is to be performed, for each craft or type of worker or mechanic needed to execute the contract.

*Id.*, 820 ILL. COMP. STAT. 130/3.

According to Plaintiff, prior to 2001, IDOL's policy was to conduct statewide surveys in order to determine the prevailing wage classifications and wage rates in Illinois. Plaintiff alleges, however, that on July 1, 2002, IDOL began collecting wage certification forms and collective bargaining agreements (CBAs) from the trade union it has traditionally recognized as performing a majority of the work in each classification ("Recognized Union"). Plaintiff further asserts that IDOL adopts the wage rates set out in these forms and CBAs without conducting any inquiry into whether they actually constitute the prevailing rates. Pursuant to the IPWA, if a contractor is determined to have paid less than the prevailing wage rate, IDOL issues a Demand Letter. The Demand Letter requires the offending contractor to submit the underpayment and assesses a penalty of 20% of the total underpayment. If the contractor in violation does not submit

payment, an additional penalty (equal to 2% of the 20% penalty) is incurred each thirty-day period that IDOL does not receive payment.

Plaintiffs allege that because IDOL accepts without investigation the wage rates submitted by the Recognized Union, IDOL is effectively delegating the task of setting wage rates to a private party without sufficient standards to guide them. This, they argue, is a violation of due process. Additionally, Plaintiffs argue that they have been denied equal protection because they are subjected to disparate treatment as compared to other construction companies encompassed by the IPWA.

### III. DISCUSSION

*A.    Count I – Due Process Claim: Improper Delegation to Private Parties*

A valid due process claim requires a plaintiff to have a legitimate property interest at stake. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *Shvartsman v. Apfel*, 138 F.3d 1196, 1198 (7th Cir. 1998) ("To prevail on their due process claim, the plaintiffs must first demonstrate that they were deprived of a protected property interest."). Judge Filip addressed this issue and concluded that the money Plaintiffs have already earned on existing contracts constitutes a valid property interest. *Beary Landscaping, Inc. v. Ludwig*, 479 F.Supp.2d 857, 876 (N.D. Ill. 2007). I agree with Judge Filip's analysis, and therefore conclude that Plaintiffs have properly established a legitimate property interest.

Establishing a legitimate property interest is a necessary prerequisite to pleading a due process claim, but it is not, in and of itself, sufficient. *See Shvartsman*, 138 F.3d at 1198. Plaintiffs' due process argument initially rested on a claim that IDOL's methods were not in compliance with the IPWA. Judge Filip dismissed this claim as merely a dressed-up state law

issue. *Beary*, 479 F.Supp.2d at 876. Judge Filip reasoned that § 1983 cannot be used to litigate errors of state law. *Id*. at 868 (*citing Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988)). Based on the way Plaintiffs had formulated their original complaint, this was the proper disposition. To be sure, in their Second Amended Complaint, Plaintiffs continue to assert that IDOL's policies deviate from IPWA. However, the basis for their claim now lies in the fact that IDOL's policies violate due process. Thus, Plaintiffs insist that this is not merely a state law matter.

Plaintiffs did not raise the issue of improper delegation to private parties in their original complaint, and thus Judge Filip did not address this issue in his memorandum opinion. The Supreme Court has long held that a state legislature may not delegate its own powers to private parties without providing standards for the exercise of discretion. *See Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928); *Eubank v. City of Richmond*, 226 U.S. 137 (1912); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886).

Plaintiffs here allege that IDOL accepts collective bargaining agreements between unions and employer organizations without inquiry and without providing guiding standards. This, they argue, violates the Due Process Clause as an improper delegation to private parties. The Second Circuit confronted a similar argument in *General Electric Co. v. N.Y. Dept. of Labor*, 936 F.2d 1448 (2d Cir. 1991). In that case, New York's labor law required contractors to pay workers at least the prevailing wage rate for all contracts in which the state was a party. The New York Department of Labor determined that General Electric had paid its employees less than the prevailing wage rate on a particular railroad contract, and thus imposed penalties. General Electric argued that "prevailing wage schedules were taken without modification from the Local

4

3 and Local 25 Agreements, and that this pro forma adoption of the unions' submission was in accord with the Department's unpublished internal policies." *Id.* at 1458. The *General Electric* court held that there were triable issues regarding New York's procedure of accepting wage rates from union agreements without inquiry or modification. 936 F.2d at 1459. Therefore, the court reversed the trial court's grant of summary judgment for the defendant. *Id.*

Defendant's attempts to distinguish *General Electric* from this case are unavailing. She argues that this case is distinguishable for two reasons. First, she argues that, unlike in the present case, the Second Circuit found a valid property interest. Second, she argues that New York's two-scale wage rate system is materially different from Illinois' scheme. Addressing the first assertion, Judge Filip and I have both determined that the wages Plaintiffs previously earned and IDOL previously withheld constitute a legitimate property interest. Defendant's second reason fails as well. Defendant points to New York's wage rate scales, but this is an immaterial distinction that has no bearing on the present case. The key comparison is that the *General Electric* plaintiffs alleged that the New York Department of Labor accepted wage rates from unions without investigation, and the Second Circuit found this claim of improper delegation sufficient to withstand a dispositive motion. 936 F.2d at 1459.

Though the Second Circuit's precedent is not binding here, the court's reasoning is persuasive. While they are not assured of ultimate victory, I conclude that Plaintiffs have sufficiently alleged a due process claim of improper delegation to private parties. Defendant's motion to dismiss Count I is denied.

B. *Count III – Equal Protection*

Defendant's motion to dismiss Count III is denied as well. Plaintiffs allege that they have been treated differently than other similarly situated companies, and that there is no rational government purpose for this disparate treatment. This, they say, violates equal protection. Plaintiffs assert that because the wage rates that actually prevail in the landscape industry are not taken into account when calculating IDOL's prevailing wage rate, they have been treated differently than firms performing other types of construction work whose actual prevailing rates are considered. Plaintiffs allege that there is no rational governmental purpose for this disparate treatment. The disparate treatment, Plaintiffs assert, is meant to punish Plaintiffs for associating with a non-recognized union.

Judge Filip ruled on the issue of equal protection in his memorandum opinion. He held that "[t]hese allegations, if construed generously, can be read to state an Equal Protection claim. First, if the IDOL is drawing lines between market actors with literally no coherent reason for the disparate treatment, that can implicate the Equal Protection clause." 479 F.Supp.2d at 881; *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (holding that an equal protection claim stands "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

Defendant's motion to dismiss the equal protection claim is basically a motion to reconsider Judge Filip's holding. I decline to revisit his decision. The law of the case doctrine instructs: "a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). It is important to insure that "a change of judges

midway through a case will not mean going back to square one." *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997).

As noted above, there are exceptions to the law of the case doctrine, namely when there is a "compelling reason" to reconsider. *Minch*, 486 F.3d at 301. In the present case, however, there is no evidence of the kind of "manifest error" or "change in the law" that necessitates re-examination. *Id*. Nor have the parties alleged any new or persuasive facts or claims following the Second Amended Complaint that would warrant reconsideration. Judge Filip articulately addressed the equal protection issue in his memorandum opinion, and concluded that Plaintiffs' claim was sufficient to survive a 12(b)(6) motion to dismiss. 479 F.Supp.2d at 880-882. I agree with Judge Filip's reasoning and decline to disturb the result.

I need not and do not rule on the plausibility of Plaintiffs' claim at this stage. At minimum, though, Judge Filip was correct in concluding that the claim is sufficient to withstand defendant's 12(b)(6) motion to dismiss. Defendant's motion to dismiss Count III is denied.

## IV. CONCLUSION

For the preceding reasons, Defendant's motion to dismiss Counts I and III is denied. The motion to dismiss Count II is denied as moot.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: November 18, 2008