# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BEARY LANDSCAPING, INC., GREAT LAKES LANDSCAPING CO., INC., MCGINTY BROS., INC., NATURAL CREATIONS LANDSCAPING, INC., PEDERSEN CO., REIL CONSTRUCTION, INC., SEBERT LANDSCAPING CO., STAN'S LANDSCAPING, INC., WALSH LANDSCAPE, INC., BRIAN BEARY, JOHN CEDERLUND, JOSE GARCIA, SANDRA HARYNEK, CLINTON J. MAHONEY, CHARLES P. MCGINTY, SR., PAUL F. PEDERSEN, STANLEY PEDERSEN, JEFFREY SEBERT, and JOHN R. WALSH III, <br><br>      Plaintiffs, <br><br>      v. <br><br>CATHERINE SHANNON, in her official capacity as Director of the Illinois Department of Labor, <br><br>      Defendant. | No. 05 C 5697 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, landscaping companies and certain of their owners and officers, brought this suit in 2005 over differences with the way the Illinois Department of Labor ("IDOL") sets wages for landscape workers on public works projects. Plaintiffs initially asserted a variety of federal and state theories for their core disagreement about the wages. Judge Mark Filip, who previously had this case, issued an order on March 28, 2007, dismissing many, though not all, of the claims.

In response to Judge Filip's order, Plaintiffs filed a second amended complaint contending three violations of the federal constitution. Count I alleges a violation of the 14th

Amendment Due Process clause by improper delegation of governmental power to private parties. Count II alleged a violation of the same clause for failure to afford a hearing, and Count III alleged a violation of the equal protection clause. Plaintiffs voluntarily dismissed Count II. I denied Defendant's motion to dismiss Counts I and III in an order dated November 18, 2008. Later, Plaintiffs voluntarily withdrew Count III. What remains, then, is a single theory: an as-applied challenge to IDOL's wage determination process as an improper delegation to private parties in violation of the due process clause. The parties have cross-moved for summary judgment on this count.

For the following reasons, Plaintiffs' motion is denied and Defendant's motion is granted.

## I. FACTUAL BACKGROUND

### A. The Parties

Plaintiffs are landscape contractors who perform or have performed landscape construction projects subject to the Illinois Prevailing Wage Act ("IPWA"), 820 Ill. Comp. Stat. 103/0.01 *et seq*. The projects were all done in one or more of the following counties: Cook, DuPage, Grundy, Kane, Kendall, Lake, McHenry, and Will.

Defendant, Catherine Shannon, is the Director of the Illinois Department of Labor ("IDOL"). She is sued in her official capacity. It is undisputed that her duties include enforcement of the IPWA.

### B. Relevant Provisions of the IPWA

The IPWA establishes that:

"[I]t is the policy of the State of Illinois that a wage of no less than the general

prevailing hourly rate as paid for work of a similar character in the locality in which the work is performed, shall be paid to all laborers, workers and mechanics employed by or on behalf of any and all public bodies engaged in public works.

IPWA, 820 ILL. COMP. STAT. 103/1.

Section 3 of the IPWA requires that workers engaged in the construction of public works be paid "the general prevailing rate of hourly wages of a similar character...in the locality in which the works is performed." 820 ILL. COMP. STAT. 130/3.

Section 9 of the IPWA specifies that "[t]he Department of Labor shall during the month of June of each calendar year, investigate and ascertain the prevailing rate of wages for each county in the State." 820 ILL. COMP. STAT. 130/9. The same section also states that all such determinations be posted for interested parties to review. *See id.*

Further, Section 9 of the IPWA states that:

At any time within 30 days after the Department of Labor has published on its official web site a prevailing wage schedule, any person affected thereby may object in writing to the determination or such part thereof as they may deem objectionable by filing a written notice with the public body or Department of Labor, whichever has made such determination, stating the specified grounds of the objection. It shall thereafter be the duty of the public body or Department of Labor to set a date for a hearing on the objection after giving written notice to the objectors at least 10 days before the date of the hearing and said notice shall state the time and place of such hearing. Such hearing by a public body shall be held within 45 days after the objection is filed, and shall not be postponed or reset for a later date except upon the consent, in writing, of all the objectors and the public body. If such hearing is not held by the public body within the time herein specified, the Department of Labor may, upon request of the objectors, conduct the hearing on behalf of the public body.

*Id.* Illinois' Administrative Review Law "appl[ies] to and govern[s] all proceedings for the judicial review of final administrative decisions of any public body or the Department of

Labor" under Section 9. *Id.* The Administrative Review Law grants the rights of direct and appellate review to "any party." *See id.*; *see also* 735 ILL. COMP. STAT. 3-101 *et seq.*

### C. IDOL's Wage Determination Procedures and Enforcement Policy

In 2000 and 2001, IDOL conducted surveys in thirty-four Illinois counties to investigate wage rates. 2001 was the last year such a survey was conducted. On July 1, 2002, IDOL began collecting wage certification forms and collective bargaining agreements (CBAs) from the trade unions it has traditionally recognized as performing a majority of the work in each classification. IDOL does not conduct inquiry into whether the traditionally recognized unions still represent a majority of the workers in any particular wage determination category.

The recognized unions submit the forms on a monthly basis. IDOL adopts the wage rates set out in these forms and CBAs without conducting significant further inquiry. Pursuant to the IPWA, if a contractor is determined to have paid less than the prevailing wage rate, IDOL issues a Demand Letter. The Demand Letter requires the offending contractor to submit the underpayment and assesses a penalty of 20% of the total underpayment. If the contractor in violation does not submit payment, an additional penalty (equal to 2% of the 20% penalty) is incurred each thirty-day period that IDOL does not receive payment.

### D. Pending Enforcement Actions

The contractors have been paid their full contract amounts on work completed, or substantially the full amounts. Each of the individual Plaintiffs have been issued at least one Demand Letter requesting back pay on behalf of workers alleged to have been underpaid. Additionally, the Demand Letters include a request for the statutory penalties. Further, in underlying state actions, Defendant is suing several of the Plaintiffs to enforce the Demand

Letters. *See People ex rel. Illinois Department of Labor v. Beary Landscaping, Inc.*, Case No. 2010 L 004546 (Cir. Ct. Cook County); Orders of October 14, 2008, and April 7, 2010, *People ex rel. Illinois Department of Labor v. Stan's Landscaping, Inc.,* Case No. 2008L000550 (Cir. Ct. DuPage County); Orders of June 18, 2008, and March 3, 2010, *People ex rel. Illinois Department of Labor v. Paul Pedersen d/b/a Pedersen Co.,* Case No. 2007CH3207 (Cir. Ct. DuPage County); Order of April 9, 2009, *People ex rel. Illinois Department of Labor v. Great Lakes Landscape Co., Inc.,* Case No. 2008L012128 (Cir. Ct. Cook County); Order of April 9, 2009, *People ex rel. Illinois Department of Labor v. Mahoney & Associates, LLC*, Case No. 2008L004896 (Cir. Ct. Cook County); Order of June 30, 2008, *People ex rel. Illinois Department of Labor v. Sebert Landscaping Co.,* Case No. 2008L001145 (Cir. Ct. Cook County).

E. Plaintiffs' Argument

The gist of Plaintiffs' complaint is that Defendant is violating Plaintiffs' federal constitutional rights by rubber-stamping wages set in the private collective bargaining process, rather than "investigat[ing]" and "ascertain[ing]" the proper wages for herself, as required by the IPWA. While this might also incidentally violate Illinois statutory law, Plaintiffs claim this violates the Fourteenth Amendment as an unconstitutional delegation of a governmental function to private parties.

**II.    STANDARD OF REVIEW**

Summary judgment under Rule 56 is appropriate if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( c). *See also Celotex v. Catrett*, 477 U.S. 317, 422 (1986); *Vision Church v. Vill. of Long Grove*, 468 F. 3d 975, 988 (7th Cir. 2006). A court evaluates the evidence in the

light most favorable to the non-moving party, making no determinations about the credibility of witnesses or the weight of the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2008).

The evidence submitted in summary judgment briefing and argument must be admissible at trial, though sworn testimony, such as from a deposition or affidavit, may be considered. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Scott v. Edinburg,* 346 F.3d 752, 759-60, n. 7 (7th Cir. 2003).

## III. DISCUSSION

Plaintiffs have produced significant evidence that Defendant is failing in her charge to faithfully enforce Section 9 of the IPWA. Further, Plaintiffs have produced some eyebrow-raising figures that suggest that Defendant is doing no favors for the taxpayers of the State of Illinois.[1]

Unfortunately for Plaintiffs, none of this goes far enough to establish that Defendant's actions violate the procedural due process protections of the Fourteenth Amendment to the federal constitution. This is because Plaintiffs fail to recognize the full extent of their procedural remedies under Illinois law.

### A. The Procedural Due Process Standard and Improper Delegation

The Fourteenth Amendment to the United States Constitution states in part "...nor shall any State deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The "essential principle of due process" relevant to this case is that a deprivation

---

[1] To take just one example, on Federal and private landscaping projects undertaken in Cook County, the going rate for a "landscape helper" in June 2010 was $11.50 per hour in total compensation. The same person working a state-funded project would receive a total hourly compensation package of $52.70 - that is, 458% of the comparable federal or private rate.

of property generally "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted). In some circumstances, however, post-deprivation process is constitutionally sufficient. *See generally Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

A procedural due process claim calls for a two-step analysis. *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010). First, I must determine whether Plaintiff has established a protected property interest, and second I must determine what process is due. *Id.* In analyzing the second issue, the procedural requirements turn on whether the deprivation alleged takes place under established state procedure or whether the conduct is "random and unauthorized." *See id.*; *see also Parratt,* 451 U.S. 527; *Zinermon v. Burch*, 494 U.S. 113, 124-30 (1990); *Easter House v. Felder*, 910 F.2d 1387 (7th Cir. 1990) (interpreting *Parratt* and *Zinermon*). If the former, the state can predict potential problems and so notice and a pre-deprivation hearing are required. *See id.* If the latter, a post-deprivation hearing or other common law tort remedy for a wrongful deprivation satisfies due process. *See Zinermon*, 494 U.S. at 128.

In a line of cases beginning with *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), the Supreme Court has interpreted the due process clause of the Fourteenth Amendment as placing limits on the "manner and extent to which a state legislature may delegate to others powers which the legislature might admittedly exercise itself." *McGautha v. California*, 402 U.S. 183, 272 n. 22, 28 (1971) (Brennan, J., dissenting); *see, e.g., Eubank v. City of Richmond*, 226 U.S. 137 (1912) (adjacent property owners ability to command set-back lines for neighboring property by ordinance violates due process as unconstitutional delegation to private parties); *Seattle Title Trust Co. v. Roberge*,

7

278 U.S. 116 (1928) (ability of nearby property owners to effectively veto zoning variance violates due process); *see also City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 437 n. 5 (1985) (implying continued vitality of unconstitutional delegation doctrine).

B. Plaintiffs' Property Interest

Plaintiffs asserted property interest is the money - already paid out by the state - which the IDOL seeks to recover from Plaintiffs as being inappropriately withheld from their landscape employees. In addition to seeking this difference between the IDOL's prevailing wage and the lower rate that the Plaintiffs actually paid, the IDOL seeks a 20% underpayment penalty and an amount equal to 2% of the 20% per worker per thirty-six day period during which Plaintiffs do not pay. There is no doubt that these substantial monetary sums are sufficient property interests to satisfy the first step of the due process analysis. Indeed, Defendants dedicate no portion of their briefing to disputing this.

C. The Process Due and the Process Provided

In their briefings, Plaintiffs rely heavily on *General Electric Co. v. New York State Department of Labor*, 936 F.2d 1448 (2nd Cir. 1991). In *General Electric*, the Second Circuit reversed a summary judgment victory for the New York Department of Labor ("NYDOL") in a similar wage-determination case. *Id.* at 1458-59. Citing some evidence that the NYDOL was not employing "any discretion in setting wage...rates," but was instead merely certifying rates collusively arrived-at through negotiation between an electrical contractors association and certain locals of the International Brotherhood of Electrical Workers, the Second Circuit held that General Electric was entitled to "further discovery into the actual procedure the state followed in setting the prevailing wage rate...and, if necessary, a trial on the merits." *Id.* at 1459.

8

Plaintiffs have taken *General Electric* to mean that a state Department of Labor's "defer[ence] to the unions and employer organization that negotiate CBAs to set the prevailing wage rates without supplying any standards to guide these parties' discretion...violates due process." At the motion to dismiss stage, I determined that *General Electric* established that such a theory could, under certain circumstances, establish a due process violation. *See Beary Landscaping v. Shannon*, 2008 U.S. Dist. LEXIS 94258 (N.D. Ill. Nov. 18, 2008). Plaintiffs now argue that "[t]he allegations of improper delegation upon which the Court relied now are undisputed facts," and that therefore they are entitled to judgment as a matter of law. Plaintiffs overlook that I emphasized they "were not assured of ultimate victory," depending on how the full factual picture emerged through discovery, and of course a "district court's finding that a claim is properly stated for Rule 12(b)(6) purposes has no effect on its determination of the merits of that claim." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 767 (7th Cir. 2003).

With a full factual picture before me, it is clear that *General Electric*, while partly helpful to plaintiffs, does not consider other vital aspects of a due process claim that are dispositive in this case. Even assuming - given *General Electric* - that Plaintiffs have now proven that Defendant inappropriately delegates her wage-determination function to private parties, that does not in and of itself cement the constitutional violation. As the Supreme Court has explained it:

> The constitutional violation actionable under Section 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon*, 494 U.S. at 126.

Here, I again assume a constitutionally significant deprivation in the form of the flawed wage determination. But the process is not "complete unless and until" Illinois denies sufficient process to cure the deprivation. *Id.*

As described above, Section 9 of the IPWA explicitly provides for administrative review of all wage determinations. *See* 820 ILL. COMP. STAT. 130/9. Plaintiffs contend that seeking relief from the wage determinations in these Section 9 hearings is "futile," because "[o]nce IDOL certifies and publishes the rates in a CBA, IDOL considers payment of any wage or fringe benefit at a lower rate unlawful and refuses to consider evidence of payment of any such lower rate in any hearing under Section 9." If wage determination challenges were deemed final and unreviewable at that point, Plaintiffs might have a case that the state process is constitutionally deficient. But they are not: the IPWA explicitly provides for judicial review on top of the administrative process. *See id.* (stating that Illinois's Administrative Review Law applies to "final determination[s]" under Section 9); *see also* 735 Ill. Comp. Stat. 5/3-101 *et seq.*

Plaintiffs' alleged deficiencies in the Section 9 hearing process are further mitigated. Consider the principal remedy sought in this very litigation. Plaintiffs are not suing to recover anything, for they were paid in full on their contracts. Rather, they are seeking an injunction that would restrain Defendant and the IDOL "from taking any action against...Plaintiffs to enforce the IPWA as to any public works project performed by employees of said Plaintiffs."[2] The main coercive lawsuits respecting the funds are state court actions in which IDOL is suing Plaintiffs on behalf of (what IDOL asserts are) underpaid workers.

---

[2]This distinction alone is a considerable one from *General Electric*. In that case, the New York Department of Labor had payments withheld from the plaintiffs, and the plaintiffs were seeking to recover the monies never paid to them. *General Electric*, 936 F.3d at 1451.

10

Plaintiffs have been paid on the contracts, and as a matter of the due process clause of the Fourteenth Amendment they have adequate procedural protections of their money in the form of the civil process of the State of Illinois.

IV. CONCLUSION

Because Plaintiffs have sufficient procedural protections in the State of Illinois, summary judgment is denied for Plaintiffs and granted for Defendants.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: March 22, 2011